**SHAPIRO & CROLAND**
**Attorneys at Law**
Continental Plaza II
411 Hackensack Avenue, 6th Floor
Hackensack, NJ 07601
Tel.: (201) 488-3900
Fax (201) 488-9481
Proposed Attorneys for Debtor, Arthur Groom & Company, Inc.

|  |  |
|---|---|
| In re: | UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY |
| ARTHUR GROOM & COMPANY, INC. | Chapter 11 |
|  | Case No: 10- |
| Debtor. | Hearing Date: |

**VERIFIED MOTION OF DEBTOR FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §363(c)(2) AUTHORIZING DEBTOR'S INTERIM AND FINAL USE OF CASH COLLATERAL AND SCHEDULING A FINAL HEARING**

Arthur Groom & Company, Inc. ("Debtor") moves this Court for entry of an order pursuant to 11 U.S.C. §363(c)(2) and F.R.B.P. 4001(b) authorizing Debtor's interim and final use of cash collateral and scheduling a final hearing and, in support thereof, says:

### I.    INTRODUCTION AND JURISDICTION

1. This verified motion is submitted in support of the Debtor's motion for entry of an order authorizing the Debtor's interim and, ultimately, final use of cash collateral in which TD Bank, N.A. ("TD"), Velocity Financial Group, Inc. ("Velocity"), Alliance Leasing ("Alliance"), Co-Activ Capital Partners ("Co-Activ") and M&I Equipment Finance Company ("M&I") (collectively the "Lenders") may claim an interest in; and b) scheduling a final hearing on the Debtor's request to use the Lenders' cash collateral pursuant to 11 U.S.C. §363(c)(2) and Federal Rule of Bankruptcy Procedure 4001 (the "Motion").

2. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §1334. This is a

154533-1

"core proceeding" pursuant to 28 U.S.C. §157(b)(2)(A),(M)(O). Venue is proper in this Court pursuant to 28 U.S.C. §1409(a).

3. Without the use of the Lenders' cash collateral, the Debtor will be unable to pay its ordinary and necessary operating expenses including, but not limited to, payroll and related obligations, taxes, rent, utilities and insurance or purchase inventory. As a result, the Debtor's operations would cease resulting in the loss of the going concern value of Debtor causing immediate and irreparable harm.

4. To preserve the Debtor's business and assets for the benefit of creditors, the Court should authorize the Debtor to use the Lenders' cash collateral in accordance with the budget attached hereto as Exhibit A (the "Budget") and enter the accompanying proposed interim cash collateral order. Thereafter, and following a hearing to be scheduled by the Court, the Court should grant final approval of the Debtor's use of cash collateral.

5. As will be demonstrated below, the use of cash collateral in accordance with the Budget will result in no reduction of the Lenders' cash collateral. Accordingly, the Court should authorize the Debtor's use of the Lenders' cash collateral consistent with the Budget.

## II.    BACKGROUND

6. On February 3, 2010 (the "Petition Date") Debtor filed a voluntary petition for reorganization under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Debtor has remained in possession of its assets and continues management of its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

7. Debtor operates a retail jewelry store in Ridgewood, New Jersey. In addition to its retail operations, Debtor's principal has perfected a procedure to enhance emeralds making them more marketable. Debtor maintains an inventory of emeralds which it enhances and, pursuant to

a recently entered into consignment agreement with America's Collectibles Network, Inc. (the "Network"), the enhanced emeralds are promoted on Network broadcasts and sold to viewers of the Network. The Network reaches an audience of millions of people and its annual revenue is approximately $430 million. The Network entered into the agreement with Debtor in the expectation of substantially increasing its current annual emerald sales of approximately $3.1 million.

8. Debtor is a party to a number of equipment lease agreements for equipment used by Debtor in the emerald enhancing process. Debtor expended significant amounts with regard to developing the emerald enhancement process and, as with other jewelry retailers, experienced a major decline in revenue of its retail operations. Specifically, Debtor's revenue declined from approximately $4.1 million for fiscal year ended July 31, 2007 to approximately $3.2 million for fiscal year ended July 31, 2009.

9. As a result of the foregoing, Debtor was unable to make payments due under the equipment lease agreements and a number of leasing company creditors commenced actions against the Debtor to replevy the equipment and for damages.

10. Over several months Debtor attempted to negotiate a forbearance agreement with the leasing company creditors. Although Debtor was successful in obtaining the consent of a number of the leasing company creditors to its forbearance proposal, several of the leasing company creditors did not agree and, accordingly, Debtor was compelled to seek protection under chapter 11 of the Bankruptcy Code.

II.     The Debtor's Pre-Petition Relationship With The Lenders[1]

A. TD

11. On August 7, 2006 Debtor borrowed $2 million from TD pursuant to a revolving credit note (the "RC Note"). In addition, on or about August 7, 2006 Debtor borrowed $600,000 from TD as evidenced by a certain term promissory note (the "Term Note").

12. Payment of Debtor's obligations to TD under the RC Note and the Term Note is secured by a security interest in all of Debtor's personal property and the proceeds therefrom (the "Collateral").

13. The obligations due under the RC Note came due on November 30, 2009 and Debtor defaulted in the payment of the RC Note.

14. As of December 16, 2009 TD asserts that there is due on the RC Note the principal sum of $2 million together with accrued and unpaid interest in the amount of $4,000 plus attorneys' fees and costs and disbursements.

15. In addition, TD asserts that as of December 16, 2009, there is due and owing pursuant to the Term Note the principal sum of $236,662.02, together with accrued and unpaid interest in the amount of $2,360.88 plus attorneys' fees and costs and disbursements.

B. Velocity

16. On or about September 10, 2007 Debtor entered into a master lease agreement with Velocity for the lease of an emerald enhancing machine. The lease was subsequently assigned by Velocity to Alliance (the "Alliance Equipment Lease").

17. In addition, on or about April 30, 2008 pursuant to a separate lease schedule

---

[1] Debtor reserves the right to challenge the extent, validity and priority of the liens of Velocity, Alliance, M&I and Co-Activ. In addition, pursuant to an appraisal report prepared by A. Atkins Corporation as of August 13, 2009, the value of Debtor's assets did not exceed the amount due to TD which has a first priority lien in all of Debtor's assets. Accordingly, Debtor reserves the right to file a motion pursuant to section 506 of the Bankruptcy Code determining that the claims of the other Lenders are unsecured, in full or in part.

154533-1                                           4

incorporating the master lease agreement Debtor and Velocity entered into another lease for an emerald enhancing machine (the "Velocity Equipment Lease").

18. Debtor defaulted in the payment due under the Alliance Equipment Lease and the Velocity Equipment Lease. Prior to the Petition Date, a judgment was entered in favor of Velocity with regard to the Alliance Equipment Lease and the Velocity Equipment Lease in the sum of $1,189,515.74.

19. Velocity may assert that payment of the amounts due under the Alliance Equipment Lease and the Velocity Equipment Lease are secured by a lien in all of Debtor's assets, subordinate to the lien of TD. Debtor disputes that Velocity has a perfected lien in the Collateral.

C. M&I

20. On or about December 20, 2007 Debtor entered into an equipment lease for an emerald enhancing machine with Velocity. Thereafter, Velocity assigned the lease to M&I (the "M&I Equipment Lease").

21. Prior to the Petition Date, Debtor defaulted in the payments due under the M&I Equipment Lease and a judgment was entered in favor of M&I against Debtor in the amount of $530,179.41.

22. M&I may assert that it has a lien in the Collateral. Debtor disputes that M&I has a perfected lien in the Collateral.

D. Co-Activ

23. On or about July 8, 2008 Debtor entered into a lease for an emerald enhancing machine with Co-Activ (the "Co-Activ Equipment Lease").

24. Debtor defaulted in the payment due under the Co-Active Equipment Lease.

Debtor believes that the remaining amount due under the Co-Activ Lease is approximately $587,250.

25. Co-Activ may assert that it has a lien in the Collateral. Debtor disputes that Co-Active has a perfected lien in the Collateral.

### III.    RELIEF REQUESTED AND BASIS THEREFOR

26. In accordance with section 363(c)(2) of the Bankruptcy Code, Debtor seeks authority to use cash collateral. Without the use of cash collateral, Debtor will be unable to pay its ordinary and necessary operating expenses including, but not limited to, payroll and related obligations, rent, utilities and insurance, and be unable to purchase inventory for its business. If put in such a position, Debtor's operations would cease causing Debtor to suffer immediate and irreparable harm.

27. To preserve the Debtor's business and assets the Court should authorize the Debtor to use cash collateral in accordance with the Budget attached hereto as Exhibit A and enter the accompanying proposed interim cash collateral order.

28. Pursuant to sections 363(c)(2) and 363(e) of the Bankruptcy Code, Debtor should be authorized to use cash collateral on the condition that Debtor provide adequate protection of the interest of an entity in cash collateral.

29. As set forth in section 361(1) of the Bankruptcy Code the granting of a replacement lien in the Debtor's post-petition assets to the extent the use of cash collateral results in a decrease in the value of the secured creditor's collateral is a means of providing adequate protection. See, In re Prichard Plaza Assoc. LP, 84 B.R. 289, 302 (Bankr. D. Mass. 1988).

30. The Budget demonstrates that Debtor will operate profitably and there will not be

any diminution in the Collateral. Thus, a replacement lien adequately protects the interest of each creditor asserting a lien in the Collateral.

31. In addition to the replacement lien, Debtor proposes to make monthly payments as reflected in the Budget to TD which has a first priority lien in the Collateral which is not disputed by Debtor.

32. Based on the foregoing, Debtor respectfully submits the entry of the annexed interim order authorizing use of cash collateral is appropriate.

**WHEREFORE**, Debtor respectfully requests that the Court grant Debtor authority to use cash collateral pursuant to section 363(c)(2) on an interim basis and schedule a final hearing pursuant to F.R.B.P. 4001(b)(C)(2).

                                                **SHAPIRO & CROLAND**
                                                Proposed Attorneys for Debtor

Dated: February 3, 2010                             By: _____
                                                              John P. Di Iorio

## VERIFICATION

Arthur Groom, of full age, verifies as follows:

1.    I am President of Arthur Groom & Company, Inc., sole principal and officer of debtor in this action and I am authorized on behalf of Arthur Groom & Company, Inc. to verify this Motion.

2.    I have reviewed the annexed Motion and state that the allegations contained therein are true based upon my own personal knowledge and my review of the documents maintained by Arthur Groom & Company, Inc. in the ordinary course of its business.

154533-1                                            7

3.  I hereby verify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
Arthur Groom, President

154533-1

Exhibit A

| | 1<br>Week Ending<br>2/6/2010 | 2<br>Week Ending<br>2/13/2010 | 3<br>Week Ending<br>2/20/2010 | 4<br>Week Ending<br>2/27/2010 | Total<br>February 2010 |
|---|---|---|---|---|---|
| BEGINNING CASH | 66,005 | 14,883 | 34,871 | 31,640 | 66,005 |
| SALES RECEIPTS | 19,000 | 26,790 | 19,000 | 34,078 | 98,868 |
| NEW PURCHASES (ASSUMES COD) | 1,000 | 1,000 | 1,000 | 1,000 | 4,000 |
| OPERATING EXPENSES | | | | | |
| Payroll & related costs | 13,301 | 0 | 13,301 | 0 | 26,602 |
| Rent | 12,000 | 0 | 0 | 0 | 12,000 |
| Utilities (4) | 2,901 | 5,802 | 0 | 0 | 8,703 |
| Insurance: | | | | | |
| Pension (Included in payroll) | | | | | |
| Health | 3,750 | 0 | 0 | 0 | 3,750 |
| Business | 2,114 | 0 | 0 | 0 | 2,114 |
| Life | 7,303 | 0 | 0 | 0 | 7,303 |
| Advertising and promotion | 2,000 | 0 | 0 | 0 | 2,000 |
| Sales Tax | 0 | 0 | 6,430 | 0 | 6,430 |
| Other operating expenses | 3,568 | 0 | 1,500 | 0 | 5,068 |
| Bank and credit card fees | 2,395 | 0 | 0 | 0 | 2,395 |
| Professional fees | 0 | 0 | 0 | 650 | 650 |
| TOTAL OPERATING EXPENSES | 49,332 | 5,802 | 21,231 | 650 | 77,015 |
| DEBT SERVICE | | | | | |
| TD Commercial Loan | 12,039 | 0 | 0 | 0 | 12,039 |
| TD Interest Payment | 7,750 | 0 | 0 | 0 | 7,750 |
| | 0 | | | | 0 |
| TOTAL DEBT SERVICE | 19,789 | 0 | 0 | 0 | 19,789 |
| CASH FLOW | -51,122 | 19,988 | -3,231 | 32,428 | -1,937 |
| ENDING CASH | 14,883 | 34,871 | 31,640 | 64,068 | 64,068 |

| | 5<br>Week Ending<br>3/6/2010 | 6<br>Week Ending<br>3/13/2010 | 7<br>Week Ending<br>3/20/2010 | 8<br>Week Ending<br>3/27/2010 | Total<br>March 2010 |
|---|---|---|---|---|---|
| BEGINNING CASH | 64,068 | 105,788 | 128,452 | 121,159 | 64,068 |
| SALES RECEIPTS | 106,193 | 23,663 | 15,088 | 19,306 | 164,251 |
| NEW PURCHASES (ASSUMES COD) | 1,000 | 1,000 | 1,000 | 1,000 | 4,000 |
| OPERATING EXPENSES | | | | | |
| Payroll & related costs | 13,301 | 0 | 13,301 | 0 | 26,602 |
| Rent | 12,000 | 0 | 0 | 0 | 12,000 |
| Utilities (4) | 2,901 | 0 | 0 | 0 | 2,901 |
| Insurance: | | | | | |
| Pension (Included in payroll) | | | | | |
| Health | 3,750 | 0 | 0 | 0 | 3,750 |
| Business | 2,114 | 0 | 0 | 0 | 2,114 |
| Life | 3,062 | 0 | 0 | 0 | 3,062 |
| Advertising and promotion | 1,000 | 0 | 0 | 0 | 1,000 |
| Sales Tax | 0 | 0 | 6,580 | 0 | 6,580 |
| Other operating expenses | 3,568 | 0 | 1,500 | 0 | 5,068 |
| Bank and credit card fees | 1,987 | 0 | 0 | 0 | 1,987 |
| Professional fees | 0 | 0 | 0 | 650 | 650 |
| TOTAL OPERATING EXPENSES | 43,683 | 0 | 21,381 | 650 | 65,714 |
| DEBT SERVICE | | | | | |
| TD Commercial Loan | 12,039 | 0 | 0 | 0 | 12,039 |
| TD Interest Payment | 7,750 | 0 | 0 | 0 | 7,750 |
| | 0 | 0 | 0 | 0 | 0 |
| TOTAL DEBT SERVICE | 19,789 | 0 | 0 | 0 | 19,789 |
| CASH FLOW | 41,720 | 22,663 | -7,293 | 17,656 | 74,747 |
| ENDING CASH | 105,788 | 128,452 | 121,159 | 138,815 | 138,815 |

| | 9<br>Week Ending<br>4/3/2010 | 10<br>Week Ending<br>4/10/2010 | 11<br>Week Ending<br>4/17/2010 | 12<br>Week Ending<br>4/24/2010 | 13<br>Week Ending<br>5/1/2010 | Total<br>April 2010 |
|---|---|---|---|---|---|---|
| BEGINNING CASH | 138,815 | 97,861 | 103,526 | 91,745 | 102,788 | 138,815 |
| SALES RECEIPTS | 40,000 | 6,665 | 8,520 | 12,694 | 18,092 | 85,970 |
| NEW PURCHASES (ASSUMES COD) | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 5,000 |
| OPERATING EXPENSES | | | | | | |
| Payroll & related costs | 13,301 | 0 | 13,301 | 0 | 13,301 | 26,602 |
| Rent | 12,000 | 0 | 0 | 0 | 0 | 12,000 |
| Rent Other | 11,223 | 0 | 0 | 0 | 0 | 11,223 |
| Utilities (4) | 2,901 | 0 | 0 | 0 | 0 | 2,901 |
| Insurance: | | | | | | |
| Pension (Included in payroll) | | | | | | |
| Health | 3,750 | 0 | 0 | 0 | 0 | 3,750 |
| Business | 2,114 | 0 | 0 | 0 | 0 | 2,114 |
| Life | 3,062 | 0 | 0 | 0 | 0 | 3,062 |
| Advertising and promotion | 1,000 | 0 | 0 | 0 | 0 | 1,000 |
| Sales Tax | 0 | 0 | 6,000 | 0 | 0 | 6,000 |
| Other operating expenses | 8,554 | 0 | 0 | 0 | 1,500 | 10,054 |
| Bank and credit card fees | 2,259 | 0 | 0 | 0 | 0 | 2,259 |
| Professional fees | 0 | 0 | 0 | 650 | 0 | 650 |
| TOTAL OPERATING EXPENSES | 60,165 | 0 | 19,301 | 650 | 14,801 | 94,917 |
| DEBT SERVICE | | | | | | |
| TD Commercial Loan | 12,039 | 0 | 0 | 0 | 0 | 12,039 |
| TD Interest Payment | 7,750 | 0 | 0 | 0 | 0 | 7,750 |
| | 0 | 0 | 0 | 0 | 0 | 0 |
| TOTAL DEBT SERVICE | 19,789 | 0 | 0 | 0 | 0 | 19,789 |
| CASH FLOW | -40,954 | 5,665 | -11,781 | 11,044 | 2,291 | -33,736 |
| ENDING CASH | 97,861 | 103,526 | 91,745 | 102,788 | 105,079 | 105,079 |