**SHAPIRO & CROLAND**
**Attorneys at Law**
Continental Plaza II
411 Hackensack Avenue, 6th Floor
Hackensack, NJ 07601
Tel.: (201) 488-3900
Fax (201) 488-9481
Attorneys for Debtor, Arthur Groom & Company, Inc.

|  |  |  |
|---|---|---|
| In re: | : | UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY |
|  | : |  |
| ARTHUR GROOM & COMPANY, INC. | : | Chapter 11 |
|  | : | Case No: 10-13221 (MS) |
| Debtor. | : |  |

**VERIFIED MOTION OF DEBTOR FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §364(c)(2) AUTHORIZING DEBTOR TO OBTAIN CREDIT OR INCUR DEBT SECURED BY A LIEN ON PROPERTY OF THE ESTATE THAT IS NOT OTHERWISE SUBJECT TO A LIEN**

Arthur Groom & Company, Inc. ("Debtor") moves this Court for entry of an order pursuant to 11 U.S.C. §364(c)(2) and F.R.B.P. 4001(c) authorizing Debtor to obtain credit or incur debt secured by a lien on property of the estate that is not otherwise subject to a lien and, in support thereof, says:

## I.   INTRODUCTION AND JURISDICTION

1.   This verified motion is submitted in support of the Debtor's motion for entry of an order authorizing it to obtain credit or incur debt pursuant to 11 U.S.C. §364(c)(2) and Federal Rule of Bankruptcy Procedure 4001(c) through the use of the consignment procedures described more fully below ( the "Motion").

2.   This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §1334.  This is

155916-1

a "core proceeding" pursuant to 28 U.S.C. §157(b)(2)(A),(D) and (O).  Venue is proper in this

Court pursuant to 28 U.S.C. §1409(a).

      3.      Debtor, among other things, sells jewelry at retail. Since the filing of its chapter

11 petition, Debtor has been unable to obtain unsecured credit to purchase additional inventory.

      4.      Through the consignment arrangement described below, Debtor seeks to augment

its inventory and thereby increase its revenue to enhance its reorganization prospects.  The

vendors who will supply Debtor with inventory on consignment seek to obtain a first priority lien

on the consigned inventory and the proceeds thereof.  Without such arrangements, Debtor will

not be able to maintain an inventory level necessary to maximize its sales and thereby increase

its reorganization prospects.

      5.      As will be demonstrated below, the Debtor's proposed obtaining of credit through

the consignment arrangement is a proper exercise of Debtor's business judgment.  Accordingly,

the Court should authorize the Debtor to incur debt and obtain credit in the manner set forth

below.

## II.    **BACKGROUND**

      6.    On February 3, 2010 (the "Petition Date") Debtor filed a voluntary petition for

reorganization under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

Debtor has remained in possession of its assets and continues management of its business as a

debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

      7.    Debtor operates a retail jewelry store in Ridgewood, New Jersey.  In addition to its

retail operations, Debtor's principal has perfected a procedure to enhance emeralds making them

more marketable.  Debtor maintains an inventory of emeralds which it enhances and, pursuant to

a recently entered into agreement with America's Collectibles Network, Inc. (the "Network"),

the enhanced emeralds are promoted on Network broadcasts and sold to viewers of the Network.

## III.    RELIEF REQUESTED

8.    Although Debtor maintains a substantial amount of inventory of emeralds and

other jewelry for sale at retail, since the Petition Date, Debtor has been unable to obtain

unsecured credit to purchase additional inventory.

9.    Debtor is, however, able to obtain goods on consignment from a number of

vendors including, but not limited to, the following:

a.  RDI Trading;
b.  B.A. Gold;
c.  United Pearl;
d.  Stuller;
e.  Suna Brothers;
f.  GemWave;
g.  Simon Ardem;
h.  Byard & Brogan;
i.  Coast Diamond;
j.  Varner;
k.  Saturn;
l.  KimMarie Designs;
m.  Quality Designs;
n.  Edgar Neira;
o.  Memoire;
p.  David Buyers; and
q.  Herco

(together with any other vendors who will supply Debtor with jewelry on a consignment basis

hereinafter collectively referred to as the "Consignment Vendors").

10. Each of the Consignment Vendors are prepared to ship Debtor jewelry, pursuant

to the form of Consignment Agreement annexed hereto as Exhibit A, for sale in its retail store on

the following terms:

a.  Debtor shall hold the inventory for sale on consignment pursuant to N.J.S.A.
12A:9-102(20);

155916-1                                            3

b.  The Consignment Vendors shall, pursuant to N.J.S.A. 12A:9-103(2), have a first priority perfected, purchase-money security interest and lien in the specific inventory each of the Consignment Vendors supplies to Debtor and the proceeds thereof;

c.  Debtor shall account to each of the Consignment Vendors and remit the proceeds of sale from any consigned inventory to each of the Consignment Vendors by the thirty first day of the month following the sale of consigned inventory.

## IV.    BASIS FOR REQUESTED RELIEF

11.    Section 364(c)(2) provides that if a debtor-in-possession is unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense, the court, after noticing a hearing, may authorize the obtaining of credit or the incurring of debt – secured by a lien on property of the estate that is not otherwise subject to a lien. Section 364 of the Bankruptcy Code recognizes the reluctance of creditors to extend credit to a company in bankruptcy and is designed to provide incentives to creditors to extend post-petition credit. In re Defender Drug Stores, Inc., 126 B.R., 76, 81 (Bankr. D. Ariz. 1991).

12.    In evaluating a Debtor's proposed post-petition financing, courts consider whether the post-petition financing (a) was available on an unsecured basis; (b) is necessary to preserve the assets of the estate and is essential and appropriate for the continued operation of the debtor's business; (c) is in the best interests of the debtor's creditors and estates; (d) is an exercise of the debtor's sound and reasonable business judgment; and (e) contains terms that are fair, reasonable and adequate given the circumstances of the debtor and the proposed post-petition lender. In re Farmland Indus., Inc., 294 B.R. 855, 862-879 (Bankr. W.D. Mo.2003).

13.    In evaluating these factors courts will look to the facts and circumstances of a debtor's case and considerable weight is given to the benefits post-petition financing will provide to the estate. In re Ames Dep't. Stores, Inc., 115 B.R. 34, 39 (Bankr. S.D.N.Y. 1990).

14.    As set forth more fully below, consideration of the above factors warrants that

the Court authorizes Debtor to obtain credit in the manner set forth in the Motion.

    A. Unavailability of Unsecured Credit

15.    To demonstrate post-petition financing is not available on an unsecured basis, a debtor need only demonstrate, by a good faith effort, that credit was not available without the protections afforded by section 364(c) of the Bankruptcy Code. In re Snowshoe Co., 789 F. 2d. 1085, 1088 (4th Cir. 1986).

16.    Indeed, courts often recognize that where there are few lenders able and willing to extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [ a debtor] to conduct such an exhaustive search for financing." In re Sky Valley, Inc., 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), aff'd. 99 B.R. 117 (N.D. Ga. 1989).

17.    In the instant matter, Debtor has been unable to obtain post-petition financing from its primary secured creditor, TD Bank, N.A. or any other source.

    B. The Obtaining of Credit Is In the Best Interests of the Estate

18.    Furthermore, Debtor's obtaining of credit through the consignment arrangement described in this Motion will allow Debtor to obtain additional inventory for sale and, with the proceeds realized by Debtor from such sales augment the collateral base of Debtor's primary secured creditor, TD Bank, N.A., without the expenditure of any funds by Debtor to purchase new inventory.

19.    To determine whether the business judgment standard is met, a court is "required to examine whether a reasonable business person would make a similar decision under similar circumstances." In re Exide Techs, 340 B.R. 222, 239 (Bankr. D. Del. 2006).

20.    In the instant matter, Debtor's decision to enter into the consignment arrangement

described in this Motion is necessary to preserve the assets of the estate and in the best interests of Debtor's creditors. Indeed, under the consignment arrangement Debtor has no obligation to pay for the consigned inventory until after it is sold. Therefore, the consignment arrangement can only help Debtor's reorganization efforts and does not in any manner prejudice the rights of Debtor's existing creditors.

21.    The terms of the proposed consignment arrangement are fair, reasonable and adequate. The consignment arrangement provides Debtor with additional inventory it can sell and enables Debtor to enhance its revenue without diminishing its existing collateral.

WHEREFORE, Debtor respectfully requests that the Court grant Debtor authority to incur debt and obtain credit pursuant to section 364(d)(2) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(c) on the terms set forth in the Motion and grant such other and further relief as may be equitable and just.

SHAPIRO & CROLAND
Attorneys for Debtor

Dated: February 25, 2010                    By: _John P. Di Iorio_
                                                John P. Di Iorio

## VERIFICATION

Arthur Groom, of full age, verifies as follows:

1.    I am the President and sole shareholder of Arthur Groom & Company, Inc., ("Debtor"). I am authorized on behalf of Debtor to verify this Motion.

2.    I have reviewed the Motion and state that the allegations contained therein are true under penalties of perjury based upon my own personal knowledge and my review of the documents maintained by Debtor in the ordinary course of its business.

Dated: February 23, 2010

Arthur Groom, President

155916-1                                    7

# Exhibit A

## CONSIGNMENT AGREEMENT

Customer Name _____

Address _____

City, State, Zip _____

Telephone #_____ SS# _____-___-_____

Term of Agreement _____ Through _____

    Thank you for consigning your property to ARTHUR GROOM & CO.  This document confirms the understanding we have reached with you concerning that consignment.  As used in this document, "we," "us" and "our" refer to ARTHUR GROOM & CO.; "you" and "your" refer to you; "Agreement" refers to the mutual agreement expressed in this document; "term" refers to the term of the Agreement stated above.

I. CONSIGNMENT. You have consigned the property described below (the "Property") to us for sale, as your agent, on your behalf:

1) _____

2) _____

3) _____

4) _____

5) _____

6) _____

7) _____

8) _____

9) _____

10) _____

Page 2 of 4

II. CONDITION OF PROPERTY.  We acknowledge receipt of the Property.  Unless noted in the space below, the property appears to be in salable condition, without flaws or defects obvious on visible inspection without magnification.  However, we reserve the right to make further tests, inspections, and evaluations of the Property at our cost.  If these procedures disclose defects, flaws or conditions not previously observed we will notify you immediately in writing.  In that event either party may terminate this Agreement without cost or fee.  If not terminated within five (5) business days of such notice this Agreement will remain in force.  Notice of termination must be in writing. Flaws or defects observed are:

_____

_____

III. COMMISSION.  Our commission on sale of the Property shall be as follows:

_____

_____

(Sales tax, transportation, packaging and insurance, if payable by buyer, shall not be included in the sales price for purposes of computing commission).  We are authorized by you to receive the sales price on your behalf, to deduct our commission, and to remit the balance to you 31 days after.  IN NO CIRCUMSTANCE WILL THE COMMISSION BE PAYABLE UNLESS AND UNTIL THE PROPERTY IS SOLD AND THE PURCHASE PRICE PAID BY THE BUYER.

IV. WITHDRAWAL OF PROPERTY.  Prior to such time as we sell or contract to sell the Property it may be withdrawn from sale by you at no cost to you.  We retain the right to withdraw the Property from sale if your representations and warranties contained in Paragraph VII below are inaccurate.

V. AUTHORIZATION TO SELL.  We agree to use reasonable efforts, consistent with our regular practice, to sell the Property.  We are authorized to sell the Property when you have approved the proposed sales price.  We will telephone you with the proposed sale price.  You will authorize us to sell (by telephone) (only by writing). (Cross out inapplicable words)

Page 3 of 4

VI. RESPONSIBILITY FOR LOSS OR DAMAGE.  We will assume responsibility for loss or damage to the Property from the time of our receipt until (i) it is returned to your last known address (or to such other return address as you may supply) or (ii) sale, subject to the following limitations:  Our responsibility for loss or damage to the Property shall be limited to the lesser of (X) the cost of repair (if feasible in our judgment) or (Y) $ _____ You and we acknowledge that the amount stated above at (Y) represents a reasonable approximation of the value of the Property, and that it shall be your sole and exclusive remedy for loss or irreparable damage as liquidated damages.  It is agreed that the amount stated in the above paragraph is not necessarily an appraisal of the Property, and that the Property may not sell for as much as this.

VII. REPRESENTATIONS AND WARRANTIES; INDEMNITY.  You represent and warrant that you have the right to consign the Property to us for sale; that the Property is now and until its sale will be kept free of all liens, claims and encumbrances of others including, but not limited to, claims of governments or governmental agencies; that good title and right to possession will pass to the purchaser free of all liens, claims and encumbrances; and that there are no restrictions on our right to reproduce and publish photographs of it.  If you are acting as a fiduciary in executing this agreement and in the transactions contemplated hereunder, or if you are acting as agent for someone or some corporation or other legal entity that is not signing this agreement, you hereby represent as follows: (i) that you have full right and authority to execute this agreement; (ii) that you have full right and authority to authorize the sale of the property without need for court order or further proceedings of any nature.  You agree to indemnify and hold us harmless from and against any and all claims, actions, damages, losses, liabilities, and expenses (including reasonable attorney's fees) relating to the breach of any of your agreements, representations or warranties in this agreement.  Your representations, warranties and indemnity will survive the term of this agreement and the completion of the transactions contemplated by this Agreement.

VIII. AGENT.  We have been appointed your agent for purposes of the sale of the Property, and we shall have full authority to convey title to the property on your behalf once you have approved the sales price; provided, however, that we shall have no authority to make any warranties or representations on your behalf to the third parties.

IX. MISCELLANEOUS.  This agreement may only be amended in writing signed by both parties.  Addresses for notice are as written above; all notices to be effective five (5) days after mailing, first class, postage prepaid, so addressed.  This agreement is subject to the laws of the State of New Jersey.  This agreement shall be binding upon the respective heirs, executors, beneficiaries, successors and assigns of both parties.  You may not assign this Agreement without our prior written consent.  In the event that any dispute should arise concerning the ownership of the Property, we may elect (without waiving any rights we have hereunder) to file an action in interpleader so that a court may determine rights in the Property; and full costs such as court action may be charged to you.  Any action for breach of this Agreement must be brought within one (1) year of its termination.

Please confirm your agreement by dating, signing and returning to us the duplicate copy of this Agreement.

ARTHUR GROOM & CO.

By _____

Accepted And Agreed to:

_____
        Consignor

Dated: _____